JAMES E. SCOTT, Appellant, *v.* UNION PACIFIC RAIL-ROAD COMPANY, a Utah Corporation, and LIN-COLN COUNTY, NEVADA, Respondents.

No. 23565

July 29, 1993                                   857 P.2d 10

*Laurence M. Berlin,* Tucson, Arizona, for Appellant.

*Netzorg, Raleigh, Hunt & McGarry* and *Catherine M. Cortez,* Las Vegas, for Respondent Union Pacific Railroad Company.

*Keefer, O'Reilly, Ferrario & Eskin* and *Anita A. Webster,* Las Vegas, for Respondent Lincoln County.

## OPINION

*Per Curiam:*[1]

Appellant James E. Scott was seriously injured while riding his motorcycle upon what had previously been a railroad line. Scott filed this action alleging that respondents were liable for his injuries because, *inter alia,* they owned, possessed or controlled property upon which a dangerous condition was maintained and which proximately caused his injuries. Thereafter, Lincoln County filed a successful motion to dismiss and Union Pacific filed a successful motion for summary judgment. Because genuine issues of material fact remain, we reverse and remand.

### FACTS

Prior to February 11, 1984, the Los Angeles and Salt Lake Railroad Company ("LASL"), a subsidiary of Union Pacific, was the owner of a right-of-way over real property situated in Lincoln County ("the County"). The right-of-way was known as the United States Bureau of Land Management R/W Nev-042771 (R/W Nev-042771) for the LASL's Pioche/Prince railroad line. LASL applied to the Interstate Commerce Commission ("ICC") for an application to abandon a portion of its railroad line, which included the area involved in this dispute. By letter dated February 23, 1984, Union Pacific informed the ICC that R/W Nev-042771 had been abandoned on February 11, 1984.

Despite the later abandonment, Union Pacific had previously negotiated the transfer of R/W Nev-042771 to the County. Pursuant to 23 U.S.C. § 316,[2] Union Pacific directed the State, through

---

[1]THE HONORABLE CLIFF YOUNG, Justice, did not participate in the decision of this appeal.

[2]23 U.S.C. 316 authorizes a railroad company to convey to a state highway department, or its nominee, any part of its right-of-way or other property acquired by grant from the United States.

the Nevada Department of Transportation, to nominate the County as its authorized representative to receive R/W Nev-042771. Representations were made by a county commissioner to an agent of Union Pacific suggesting that all paperwork had been executed and the State's nomination of the County was complete. Thereafter, on February 11, 1984, after the abandonment had assertedly occurred, Union Pacific delivered the duly executed deed to a representative of the County;[3] the deed was recorded five days later.

On June 21, 1984, Union Pacific, believing that the County was now the owner of R/W Nev-042771, sought permission from the County to extend the period of time which was previously reserved in order to remove track, ties, switches and other track materials. The County, presumably believing it was the owner, granted Union Pacific forty-five additional days in order to accomplish the removal.

On August 4, 1985, Scott was riding his motorcycle on R/W Nev-042771. As he traveled, he drove across a wooden trestle bridge which spanned a wash approximately twenty-five feet wide and six feet deep. Scott continued riding and came to another wash of similar depth and width; however, the bridge was missing. As Scott approached the edge of the wash, he was unable to stop, his motorcycle became airborne and crashed into the opposite side of the wash.[4] Scott sustained severe injuries.

Scott filed an action alleging that Union Pacific, the State of Nevada or the County owned, occupied or controlled R/W Nev-042771 and that they breached their duty to maintain R/W Nev-042771 in a reasonably safe condition. The County responded with a motion to dismiss and Union Pacific responded with a motion for summary judgment. The district court granted both the motion to dismiss and the motion for summary judgment as to all defendants. The lower court found that ownership of R/W Nev-042771 reverted back to the United States of America once Union Pacific abandoned its claim to the right-of-way and prior to its purported transfer to the County.[5]

[3]The record does not reflect why Union Pacific was taking inconsistent positions in both abandoning and transferring the right-of-way.

[4]In his complaint, Scott alleged that the bridge was either washed out or in such poor repair as to create an unreasonably dangerous condition. Union Pacific indicated in its answering brief that "if anyone is liable for the removal of the bridge in question, assuming it simply was not just washed away, it would be the contractor [whom Union Pacific hired] who did it, not Union Pacific."

[5]By stipulation of the parties at oral argument, the State has been dismissed as a respondent in this action.

## DISCUSSION

Summary judgment is only appropriate when, after a review of the record viewed in a light most favorable to the non-moving party, there remain no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985).

On appeal, this court reviews the record in substantial part to confirm the finding by the district court that there are no genuine issues of material fact. Since our review of the entire record is without deference to the findings of the district court, our review is in that sense *de novo*. Caughlin Ranch Homeowners Ass'n v. Caughlin Club, 109 Nev. 264, 849 P.2d 310 (1993).

Scott contends that Union Pacific and the County are legally responsible for his injuries because they either created, maintained without warning, or failed to disclose to other possible owners, possessors or controllers of the right-of-way, its hazardous condition. Scott further argues that Union Pacific and the County are possessors of the right-of-way as defined by the Restatement (Second) of Torts.

Union Pacific contends that one who is not the actual owner of property does not possess it absent a concomitant actual exercise of control over the property. Union Pacific further insists that it had abandoned R/W Nev-042771 eighteen months prior to Scott's accident, and that its right of entry to remove its equipment had expired ten months before Scott's mishap. The County argues that it never owned or possessed the right-of-way because once Union Pacific abandoned it, there was no further property interest left for Union Pacific to transfer to any other entity. Thus, the County concludes that it never had any interest in R/W Nev-042771 because Union Pacific's interest had reverted to the United States prior to its purported conveyance to the County.

Union Pacific obtained the right-of-way through what is popularly known as the "General Railroad Right-of-Way Act." The specific circumstances of this case indicate that the grant of right-of-way to Union Pacific was abandoned in accordance with abandonment guidelines. Upon effective abandonment, the right-of-way or easement reverted to the underlying fee owner, which in this case is the United States. *See* City of Buckley v. Burlington Northern R. R. Co., 723 P.2d 434 (Wash. 1986); *see also* State of Idaho v. Oregon Short Line R. Co., 617 F.Supp. 207

(D.C. Idaho 1985); State of Idaho v. Oregon Short Line R. Co., 617 F.Supp. 213 (D.C. Idaho 1985). Accordingly, when the abandonment became effective, Union Pacific no longer had a transferable interest in the right-of-way. We therefore conclude that the district court properly determined that none of the parties had any *ownership* interest in the property.

It is clear, however, that the ownership issue is not dispositive of this appeal. Genuine issues of material fact remain as to whether Union Pacific or the County occupied, possessed or controlled R/W Nev-042771 at a time when a duty may have been owed to Scott. Furthermore, questions remain as to whether the bridge in question was washed out or whether the bridge was removed by Union Pacific or one of its contractors. Additional issues of material fact exist with respect to whether the County or Union Pacific had a duty to warn or to prevent the use of the right-of-way by foreseeable users such as Scott, or whether one or both should have taken measures to make the area safe for those such as Scott. Several other questions of fact which we need not discuss come to mind bearing on the issue of liability which must be determined in a trial on the merits.

For the reasons abbreviated above, we conclude that genuine issues of material fact remain which preclude resolution in a summary proceeding. We accordingly reverse the summary judgment entered below and remand for a trial on the merits.